PER CURIAM.
¶1 Kenneth Wagner appeals judgments, entered upon his no-contest pleas, convicting him of one count each of first-degree sexual assault of a child under the age of thirteen, child enticement, felony bail jumping, and exposing a child to harmful material. Wagner also appeals the order denying his motion for postconviction relief. Wagner argues he is entitled to resentencing because his trial counsel did not provide meaningful assistance during sentencing. We reject Wagner's arguments and affirm the judgments and the order.
BACKGROUND
¶2 In Price County Circuit Court case No. 2015CF54, the State charged Wagner with two counts of first-degree sexual assault of a child under the age of thirteen, one count of repeated sexual assault of a child, and two counts of child enticement. Wagner was released on bond while those charges were pending and, as a condition of that bond, Wagner was prohibited from having contact with the alleged child victim or "with any females under age eighteen unless in a business or commercial setting and only for commercial or business purposes with the exception that if the individual is a family member they must be in the presence of an adult."
¶3 While released on bond, Wagner exchanged sexually suggestive text messages and nude photographs with a different child. The State consequently charged Wagner with ten counts of felony bail jumping and one count of exposing a child to harmful material in Price County Circuit Court case No. 2016CF29. The two cases were consolidated for plea and sentencing purposes. In exchange for his no-contest pleas to one count each of first-degree sexual assault of a child under the age of thirteen and child enticement in the 2015 case, and felony bail jumping and exposing a child to harmful materials in the 2016 case, the remaining charges were dismissed but read in, and both parties remained free to argue at sentencing.
¶4 The State recommended sentences totaling twenty years' initial confinement and fifteen years' extended supervision for the 2015 case, and sentences totaling two years' initial confinement and three years' extended supervision for the 2016 case. The State further asked that the sentences on the counts within each case run concurrent to each other, but that the sentences in the 2016 case run consecutive to the sentences in the 2015 case. Accordingly, the State recommended a total sentence of forty years, consisting of twenty-two years' initial confinement and eighteen years' extended supervision.
¶5 In making its recommendation, the State emphasized that in the 2015 case, Wagner had sexual intercourse "repeatedly with a ten-year-old child," and he engaged in grooming behavior before the assaults. The State further noted that police found used condoms containing both Wagner's and the child's DNA and learned that Wagner did not use a condom during all encounters with the child. The State also highlighted Wagner's 2002 conviction for sexually assaulting a ten-year-old relative, as well as Wagner's decision to "flaunt" the conditions of his bond in the 2015 case by attempting to groom a fourteen-year-old girl-conduct that led to the charges in the 2016 case.
¶6 Defense counsel began by acknowledging to the sentencing court that Wagner's case was "one of the most serious and difficult cases" counsel had been involved in during his forty-year career. Counsel added that "each day new things came to light which made this even more serious than I thought." Defense counsel emphasized, however, that Wagner asked counsel "to indicate that obviously he was the adult," that "[h]e takes full responsibility for this," that "[i]t was wrong," and that "[i]t never should have happened." Counsel continued: "He apologizes to the victim and her family. I don't know if they can ever accept that apology. If they can't, I certainly respect that." Counsel added:
He also wants me to indicate to the Court that he believes that he needs serious psychological help. He believes that this behavior is the result of an addiction, and I'm hoping, and I know this Court is both understanding and compassionate, that you will fashion a sentence that will help him get the help he needs....
....
He wants to come out the other end of this and be a responsible citizen in the community who doesn't have these types of issues.
¶7 In framing the seriousness of Wagner's claimed addiction, defense counsel stated:
I guess what I find most disturbing is after I helped get him out on bond, and we had a long discussion about not committing any crime, not doing anything that would get him back in front of the Court, he basically re-offends and I think the [S]tate has overwhelming physical and other evidence. I think there is no question if we had taken this case to trial, a jury would have convicted and I think Mr. Wagner agrees with me....
....
I think the fact that he re-offended while he was on bail probably speaks volumes about how serious this addiction is.
To illustrate the seriousness of Wagner's addiction, defense counsel referenced professional golfer Tiger Woods and how his sex addiction cost him significantly, in terms of his marriage and his career. Counsel noted that Wagner understood he would be going to prison-potentially for a long time-and acknowledged he was uncertain, but hopeful, that "our prison system in Wisconsin has programs to address his issues." Defense counsel, however, declined to make a specific sentence recommendation, stating:
I don't really think it's appropriate for defense counsel to suggest a certain number of years. I think that's within the Court's discretion, and I've always felt like I've offended judges. There is a presentence report. I know the State has to indicate to you what they think is appropriate. But more than anything else, Your Honor, I hope we can find some help for him in a sentence that you formulate.
¶8 Out of a maximum possible sentence of ninety-four-and-one-half years, the circuit court imposed concurrent and consecutive sentences resulting in an aggregate forty-year term, consisting of twenty-two years' initial confinement followed by eighteen years' extended supervision.
¶9 Wagner filed a postconviction motion for resentencing, asserting his counsel failed to provide meaningful advocacy during sentencing because he declined to make a specific recommendation; he made remarks bolstering the State's characterization of Wagner; and he failed to advance any mitigating arguments. Wagner further asserted that under these circumstances, prejudice must be presumed. Wagner's postconviction motion was denied after a Machner[1] hearing, and these appeals follow.
DISCUSSION
¶10 Wagner argues resentencing is required because his attorney failed to provide any meaningful advocacy at sentencing, thus depriving him of his right to the effective assistance of counsel. This court's review of an ineffective assistance of counsel claim is a mixed question of fact and law. State v. Erickson , 227 Wis. 2d 758, 768, 596 N.W.2d 749 (1999). The circuit court's findings of fact will not be disturbed unless they are clearly erroneous. Id. However, the ultimate determination of whether the attorney's performance falls below the constitutional minimum is a question of law this court reviews independently. Id.
¶11 To substantiate a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that counsel's errors were prejudicial. Strickland v. Washington , 466 U.S. 668, 687 (1984). We may address the tests in the order we choose. If Wagner fails to establish one prong of the Strickland test, we need not address the other. See State v. Sanchez , 201 Wis. 2d 219, 236, 548 N.W.2d 69 (1996).
¶12 In order to establish deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland , 466 U.S. at 687. However, "every effort is made to avoid determinations of ineffectiveness based on hindsight ... and the burden is placed on the defendant to overcome a strong presumption that counsel acted reasonably within professional norms." State v. Johnson , 153 Wis. 2d 121, 127, 449 N.W.2d 845 (1990).
¶13 When reviewing counsel's performance, we judge the reasonableness of counsel's conduct based on the facts of the particular case as they existed at the time of the conduct and determine whether, in light of all the circumstances, the challenged acts or omissions fell outside the wide range of professionally competent representation. Strickland , 466 U.S. at 690. Because "[j]udicial scrutiny of counsel's performance must be highly deferential ... the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689. Further, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Id. at 690.
¶14 At the Machner hearing, defense counsel explained that his sentencing strategy was two-fold. First, counsel did not want to anger the court by making light of the crimes or otherwise excusing Wagner's role in them. Second, counsel sought to convince the court that Wagner suffered from a serious addiction-made evident by his behavior while on bond-and was a person in need of help. On appeal, Wagner does not dispute that counsel's objectives at sentencing were sound. Rather, he claims his counsel was defective because counsel failed to meet these stated objectives and because counsel failed to couple these objectives with providing Wagner "affirmative sentencing advocacy." We disagree.
¶15 Wagner contends his counsel failed to advance any mitigating arguments. On the contrary, counsel emphasized Wagner's addiction and relayed to the sentencing court that Wagner took responsibility for his actions and wanted to apologize to the victims. It is unclear what additional mitigating argument counsel could have made (on appeal, Wagner offers little in this regard), especially without him appearing to downplay Wagner's responsibility for the crimes.
¶16 Wagner also claims defense counsel contravened his duty of loyalty by making comments that "were brief, consistent with the State's and almost entirely detrimental to" Wagner. We are not persuaded. The presentence investigation (PSI) writer recounted that despite his criminal record, Wagner did not think he was a threat to the community; he did not appear to fully appreciate the seriousness of his actions; he did not appear to feel any remorse; and he demonstrated little understanding of how his behavior impacted the victims. Defense counsel countered that Wagner accepted responsibility, that he was remorseful for his conduct, and that he needed "serious psychological help" for his addiction. Counsel reminded the court that Wagner declined to exercise his right to a trial that he could not win and that he understood he was going to prison. Consistent with counsel's efforts to avoid angering the court, counsel acknowledged the severity of Wagner's crimes, thus exhibiting remorse on behalf of his client, who himself had not exhibited remorse to the PSI writer. Rather than risk offending the court with a sentence recommendation, counsel asked the court to show compassion and fashion a sentence aimed at helping Wagner. In the context of this case and the circumstances facing defense counsel, this was meaningful advocacy.
¶17 Wagner nevertheless claims that, at a minimum, counsel should have endorsed the low end of the PSI recommendation for sixteen to twenty years of initial confinement. The PSI's recommendation for sixteen to twenty years of initial confinement followed by five to ten years of extended supervision applied only to the first-degree sexual assault of a child offense. Wagner's argument, therefore, ignores the PSI's recommendations for the remaining three crimes for which he was convicted. As the State notes, the PSI writer was unclear as to the sentence structure recommended, stating "[t]hese counts were considered aggravated due to the read in and dismissed offenses. It is recommended that these cases run concurrent to each other." Thus, if the writer meant that sentences on the counts within each case should run consecutive to each other, but concurrent with those in the other case, the PSI recommended twenty-one to twenty-seven years of initial confinement followed by eight to fifteen years of extended supervision. If the writer intended all counts to run concurrently, the PSI recommended sixteen to twenty years of initial confinement followed by five to ten years of extended supervision.
¶18 In his reply brief, Wagner asserts that the State "quibbles, at length with the nuances of the PSI recommendation," but "these nuances are beside the point." We disagree. In order to maintain that counsel was deficient by failing to make a recommendation consistent with the lower end of the PSI's recommendation, it is important to know what that lower end was. In any event, advocating for the lowest possible number of years recommended in the PSI would have run contrary to counsel's reasonable strategy to avoid giving the court the impression that Wagner was minimizing his crimes or his responsibility for them. Moreover, both the State and the PSI recommended sentences far lower than the maximum possible ninety-four-and-one-half-year sentence Wagner faced, especially when considering that twelve additional charges were dismissed but read in.
¶19 Apart from suggesting that his counsel endorse the lower end of the PSI's recommendation, Wagner does not specify what he believes counsel could have done differently under the present circumstances. As recounted above, Wagner committed very serious offenses, and the sentencing court reasonably concluded he was a danger to the public if not incarcerated. Of particular concern is Wagner's decision to exchange sexually suggestive text messages and nude photographs with a child while released on bond for allegations involving the sexual assault of a different child. In his reply brief, Wagner suggests his counsel should have explored available prison programs and described how the court could fashion a sentence to help Wagner get the help he needs. However, counsel could not, as Wagner suggests, detail specific programs because, as Wagner concedes, there appear to be no prison programs aimed specifically at sex addiction. Rather, counsel made a reasonable strategic decision to emphasize Wagner's "addiction" generally in an attempt to persuade the court that Wagner was a sympathetic individual in need of help.
¶20 We conclude that, under the totality of the circumstances in this case, defense counsel's strategy at sentencing was reasonable, constituted meaningful advocacy, and did not constitute deficient performance. Because counsel was not ineffective, the circuit court properly denied Wagner's postconviction motion for resentencing.
By the Court. -Judgments and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5. (2015-16).

See State v. Machner , 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).