**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**August 20, 2019**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2018AP539-CR**

**STATE OF WISCONSIN**

Cir. Ct. No.  2016CF83

**IN COURT OF APPEALS**
**DISTRICT III**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

LILA CLAIRE RUDAWSKI,

    DEFENDANT-APPELLANT.

        APPEAL from a judgment and an order of the circuit court for Chippewa County:  JAMES M. ISAACSON, Judge.  *Affirmed*.

        Before Stark, P.J., Hruz and Seidl, JJ.

        **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

        ¶1    PER CURIAM.  Lila Rudawski appeals a judgment, entered upon her no-contest plea, convicting her of possession with intent to deliver between

three and ten grams of amphetamine, as a repeater and as a second and subsequent offense. Rudawski also appeals the order denying her motion for postconviction relief. Rudawski argues the circuit court erred by denying her motion to suppress evidence. In the alternative, she claims she was denied the effective assistance of trial counsel with respect to the suppression motion. We reject these arguments and affirm the judgment and order.

## BACKGROUND

¶2 The State charged Rudawski with one count of possession with intent to deliver between ten and fifty grams of amphetamine as a second and subsequent offense, and one count of felony bail jumping, with both counts charged as a repeater. The complaint narrative recounted that law enforcement was dispatched to the home of Jacob Shager for a welfare check based on a possible suicide. Upon arrival, a person, later identified as Daniel Schmidt, was arrested after attempting to flee the property and found to be in possession of a digital scale containing white residue that field tested positive for methamphetamine. While at the residence, officers observed other drug paraphernalia in plain view during a protective sweep. The officers sought a warrant to search the "[s]ingle family dwelling … and persons and motor vehicles located on or in close proximity to said premises (said persons may be sellers or buyers of controlled substances and said vehicles may contain controlled substances)." The circuit court approved what is described as an "all persons" search warrant.

¶3 During execution of the warrant, Rudawski entered the residence to, in her words, "see what was going on." Officers searched Rudawski, including her purse, and found $243 in cash and a needle cap. Police then searched

Rudawski's nearby vehicle and discovered three clear bags of methamphetamine under the stick shift, as well as unused syringes in the glove box.

¶4    Rudawski filed a motion to suppress evidence claiming that the officers performed an illegal search. Specifically, Rudawski asserted the language of the search warrant was overly broad, the officers did not have the right to conduct a full scale search of Rudawski's person, and Rudawski's vehicle did not fall within the parameters of the warrant as it was not within "close proximity" to Shager's residence.

¶5    At the suppression motion hearing, an officer testified that, upon her entry into the home, Rudawski's person was searched pursuant to the warrant. When the officer asked Rudawski about keys he found on her, Rudawski initially claimed they were house keys, and she had been "dropped off." After the officer warned he would be checking outside the residence for any vehicles matching what appeared to be her car keys, Rudawski advised the officer "that the car was not on the property." Law enforcement located Rudawski's vehicle in a parking lot across the street, and they searched it pursuant to the warrant. Another officer testified Rudawski's vehicle was parked approximately thirty-one feet from Shager's residence, and could not have been parked any closer to the property line of the residence unless it was parked in the street or blocking a neighbor's driveway.

¶6    The circuit court denied the suppression motion after a hearing. Rudawski subsequently entered into a plea agreement. In exchange for her no-contest plea to a reduced charge of possession with intent to deliver between three and ten grams of amphetamine, as a repeater and as a second and subsequent offense, the State agreed to recommend that the remaining count be dismissed and

read in. The State also agreed to join defense counsel's recommendation to withhold sentence and place Rudawski on thirty-six months' probation with 180 days' jail time as a condition of probation. The court imposed a sentence consistent with the joint recommendation.

¶7 Rudawski filed a postconviction motion to vacate her conviction on grounds she was denied the effective assistance of trial counsel. Specifically, Rudawski claimed her counsel was ineffective by failing to argue the "all persons" search warrant was overly broad and unsupported by probable cause. After a *Machner*[1] hearing, the circuit court denied the motion, concluding Rudawski lacked standing to challenge the search of the home as she had no reasonable expectation of privacy there. The court nevertheless also rejected Rudawski's ineffective assistance of counsel claim on its merits. This appeal follows.

## DISCUSSION

¶8 First, Rudawski argues the circuit court erred by concluding she lacked "standing" to challenge the issuance of the search warrant. The Fourth Amendment to the United States Constitution and article I, section 11 of the Wisconsin Constitution protect persons from unreasonable searches and seizures. *State v. Fox*, 2008 WI App 136, ¶9, 314 Wis. 2d 84, 758 N.W.2d 790. A defendant, however, must establish standing to challenge a search—that is, the defendant must prove a legitimate expectation of privacy in the area searched. *State v. Curbello-Rodriguez*, 119 Wis. 2d 414, 423, 351 N.W.2d 758 (Ct. App. 1984).

---

[1] *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

¶9 Rudawski bears the burden of establishing her reasonable expectation of privacy by a preponderance of the evidence. *See* **State v. Whitrock**, 161 Wis. 2d 960, 972, 468 N.W.2d 696 (1991). This involves a two-prong inquiry. "Whether a person has a reasonable expectation of privacy depends on (1) whether the individual has exhibited an actual, subjective expectation of privacy in the area inspected and in the item seized, and (2) whether society is willing to recognize such an expectation of privacy as reasonable." **State v. Trecroci**, 2001 WI App 126, ¶35, 246 Wis. 2d 261, 630 N.W.2d 555. Whether a defendant has standing to raise a Fourth Amendment claim is a question of law that we review de novo. **State v. Eskridge**, 2002 WI App 158, ¶9, 256 Wis. 2d 314, 647 N.W.2d 434.

¶10 Rudawski makes no specific argument regarding the first prong of the privacy test, but the record shows she has not satisfied the subjective test. Rudawski testified that Shager was a friend she knew for approximately three years. Although she had been an overnight guest at Shager's house, it was not common for her to stay there, and the last time she spent the night was "[a] couple weeks prior." According to Rudawski, she went to Shager's home on the night of the search to look for her wallet. When she saw cars in the parking lot and police in the home, she entered "anyway" out of concern for her friend. These facts do not establish that Rudawski had an actual, subjective expectation of privacy in Shager's home.

¶11 The second prong of the privacy test is objective and looks to several factors, including whether the person had a property interest in the premises, whether the person was legitimately on the premises, and whether the person put the property to some private use. **Fox**, 314 Wis. 2d 84, ¶18. Rudawski argues she was a guest in Shager's home and society recognizes that a guest "may" have

5

standing to challenge a search. Where, as here, the person challenging the search claims status as a guest, we examine the evidence in light of the following considerations: "(1) whether the guest's use of the premises was for a purely commercial purpose; (2) the duration of the guest's stay; and, perhaps most significantly, (3) the nature of the guest's relationship to the host." *Id.*, ¶19.

¶12 Here, the circuit court found the residence was used largely for commercial purposes (it was a drug house), thus lessening the expectation of privacy. Rudawski entered the residence during law enforcement's search to look for her wallet and check on Shager. Although she may have had Shager's consent to be there, she was not an overnight guest on this occasion, and her infrequent overnight stays were insufficient for society to recognize her right to control the property. Rudawski and Shager may have been close friends, but Rudawski's connection to the property itself was tenuous at best. Because Rudawski did not have an expectation of privacy in the property, the court properly determined that Rudawski lacked standing to challenge the search of the residence.

¶13 The State concedes Rudawski had standing to challenge whether there was probable cause to support the "all persons" warrant as it related to the search of her person and her vehicle. When reviewing whether there was probable cause for the issuance of a search warrant, we accord great deference to the determination made by the warrant-issuing magistrate. *State v. Ward*, 2000 WI 3, ¶21, 231 Wis. 2d 723, 604 N.W.2d 517. The magistrate's determination will stand unless the defendant establishes that the facts are clearly insufficient to support a probable cause finding. *Id.* We must determine whether the commissioner who issued the warrant was "apprised of sufficient facts to excite an honest belief in a reasonable mind that the objects sought are linked with the commission of a crime, and that they will be found in the place to be searched." *State v. Kerr*, 181

Wis. 2d 372, 378, 511 N.W.2d 586 (1994). In doing so, we are confined to the record that was before the warrant-issuing commissioner. *Id.*

¶14 The evidence necessary to establish probable cause to issue a search warrant is less than that required to support a bind-over following a preliminary examination. *Id.* at 379. The task of the warrant-issuing commissioner "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit.., including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1982)). "Doubtful or marginal" cases should be resolved in favor of the warrant. *See State v. Higginbotham*, 162 Wis. 2d 978, 990, 471 N.W.2d 24 (1991).

¶15 In rejecting Rudawski's challenge to the all persons search warrant, the circuit court recounted that, according to the warrant affidavit, officers were dispatched to Shager's residence for a welfare check; Schmidt then jumped out of Shager's window and was apprehended in possession of drugs and drug paraphernalia; and officers observed several items of drug paraphernalia in the residence, including several syringes that appeared to be used, crumpled tin foil that appeared burnt, and numerous "cut off Q-tips" of the type often used by those injecting drugs. The court ultimately determined that the warrant was not only "appropriate," but "beyond reproach" based on the facts outlined in the affidavit.

¶16 Rudawski nevertheless argues the warrant affidavit did not provide probable cause to believe "any person" in the home was in possession of drugs or otherwise there to purchase drugs. Although Rudawski concedes the individual who ran from the residence was found with drugs and drug paraphernalia, she

claims there was no reason to believe that person lived in the residence. According to Rudawski, "[t]he more likely inference is that he had stopped by to sell drugs to someone who lived there." Even so, Rudawski asserts there was no information to show that any such drug transaction occurred in the residence that night or any other. Rudawski also contends that law enforcement's observation of drug paraphernalia during the initial protective sweep did not provide probable cause for the all persons warrant. We disagree. The averments of the warrant affidavit, as outlined by the circuit court, and the reasonable inferences drawn therefrom, provided probable cause for the search of Rudawski's person.

¶17    As the State notes, and which Rudawski does not dispute, her appellate brief does not specifically challenge the probable cause to search her vehicle. By failing to argue that the vehicle search was illegal, Rudawski has abandoned this issue. An issue raised in the circuit court but not raised on appeal is deemed abandoned. *A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998). However, even if we were to ignore the abandonment of this issue, the record supports the conclusion that there was probable cause to search the vehicle. Not only was the search of Rudawski's vehicle proper pursuant to the warrant, but even assuming the warrant did not provide legal justification for the search, the vehicle was subject to search under the automobile exception to the warrant requirement.

¶18    In determining whether the automobile exception applies, this court must consider: (1) whether there was probable cause to search the vehicle; and (2) whether the vehicle was readily mobile. *State v. Marquardt*, 2001 WI App 219, ¶33, 247 Wis. 2d 765, 635 N.W.2d 188. While officers were executing a search warrant on what was believed to be a drug house, Rudawski came to Shager's house in her vehicle with a needle cap on her person and lied about how

8

she arrived. Taken together, these factors support a reasonable inference that contraband was in Rudawski's vehicle, thus providing probable cause to search. The "readily mobile" prong is likewise satisfied, as it is undisputed Rudawski's vehicle arrived while the officers were searching the residence and thus was in working order.

¶19     Rudawski alternatively claims her conviction should be vacated on grounds she was denied the effective assistance of trial counsel. This court's review of an ineffective assistance of counsel claim is a mixed question of fact and law. *State v. Erickson*, 227 Wis. 2d 758, 768, 596 N.W.2d 749 (1999). The circuit court's findings of fact will not be disturbed unless they are clearly erroneous. *Id.* However, the ultimate determination whether the attorney's performance falls below the constitutional minimum is a question of law this court reviews independently. *Id.* To substantiate a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient, and that counsel's errors were prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A court need not address both components of this inquiry if the defendant does not make a sufficient showing on one. *Id.* at 697.

¶20     In order to establish deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. However, "every effort is made to avoid determinations of ineffectiveness based on hindsight … and the burden is placed on the defendant to overcome a strong presumption that counsel acted reasonably within professional norms." *State v. Johnson*, 153 Wis. 2d 121, 127, 449 N.W.2d 845 (1990).

¶21    In reviewing counsel's performance, we judge the reasonableness of counsel's conduct based on the facts of the particular case as they existed at the time of the conduct and determine whether, in light of all the circumstances, the omissions fell outside the wide range of professionally competent representation. ***Strickland***, 466 U.S. at 690.    Because "[j]udicial scrutiny of counsel's performance must be highly deferential … the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689.    Further, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690.    The prejudice prong of the ***Strickland*** test is satisfied where the attorney's error is of such magnitude that there is a reasonable probability that, absent the error, the result of the proceeding would have been different. *Id.* at 694.

¶22    Rudawski asserts her counsel was ineffective by failing to adequately challenge the "sufficiency of the probable cause for the issuance of the all persons search warrant."    Specifically, Rudawski argues counsel should have challenged the absence of facts to support the belief that the residence was a drug house requiring a search of all persons and vehicles in close proximity.    Trial counsel, however, did challenge the language of the search warrant as "overly broad."    Counsel argued at the suppression motion hearing:

> Officers have admitted that basically gives them free reign to search anybody for any reason within how many feet or miles or whatever.    We don't know.    It's not clearly defined.    Secondly, there's a distinction between a pat down and a search.    [It] was clear somebody walking into a search warrant can be searched on a pat-down search for officer's safety.    There's nothing that gives officers the right to conduct a full scale search.    Third, the vehicle was clearly, … for whatever [the officer] wants to say about it being a parking lot, it is clearly a parking lot associated with those cabins on the other side of a dividing road.    And

> that's the problem in part with the language of the search warrant itself. Close proximity literally gives officers the right, under that language, to go search the neighbor[']s car even just because it's in close proximity.

At the *Machner* hearing, counsel further explained that he challenged the scope of the all persons warrant, stating:

> I did indicate to the Court that I felt that the search of all persons on the premises was too broad. I argued that the officers did not have a sufficient probable cause to search Miss Rudawski when she came into the residence, and even if they had probable cause or some reason to search her for reasons other than officer safety, it didn't lead them to sufficient cause to search the vehicle.

¶23 In rejecting Rudawski's challenge to the effectiveness of her trial counsel, the circuit court acknowledged that trial counsel had argued about the warrant "being too broad." Trial counsel cannot be deficient for failing to make an argument that he actually made. The court also determined that because there was probable cause to support the warrant, any additional challenge to the warrant "would have been fruitless." As discussed above, we agree that the affidavit provided probable cause to issue the all persons warrant. Rudawski has therefore failed to establish that but for counsel's alleged deficiencies, the result of the proceeding would have been different. Because Rudawski cannot meet her burden of showing that counsel was either deficient or that she was prejudiced by any claimed deficiency, the court properly denied her postconviction motion to vacate her conviction.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

11